UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHAQUILLE HOLLINGSWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01694-JRS-DML |
| | ) | |
| DANIEL KEPLER, | ) | |
| | ) | |
| Defendant. | ) | |

**Order Granting Defendant's Motion for Summary Judgment**

Plaintiff Shaquille Hollingsworth, an inmate at the Putnamville Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983 alleging that Detective Daniel Kepler arrested him without probable cause on November 6, 2015. Detective Kepler has moved for summary judgment and Mr. Hollingsworth has not responded. The motion is now ripe for resolution. For the following reasons, Detective Kepler's motion for summary judgment is **granted**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017).

Mr. Hollingsworth failed to respond to Detective Kepler's summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th

Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). This does not alter the summary judgment standard, but it does "reduce the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Undisputed Facts

In the early morning hours of November 4, 2015, 62-year-old Tito McCombs was shot in the parking lot of an apartment building at 211 E. 9th Street in Indianapolis. Dkt. 38-5, pg. 2. Officers with the Indianapolis Metropolitan Police Department arrived at the scene at approximately 4:25 a.m. and found McCombs bleeding from the face and head. *Id.* McCombs was unable to respond to any questions. *Id.* Medics arrived and transported McCombs to Eskenazi Hospital, where he was pronounced dead at 5:03 a.m. *Id.* The autopsy revealed that McCombs had been shot in the head twice, and the manner of death was determined to be homicide. *Id.* at 3.

IMPD Detective Daniel Kepler begin investigating the case. Dkt. 38-7, ¶ 2. Kepler was informed that officers at the scene had interviewed Dr. Kathryn Peck, who stated that she witnessed two males tussling with each other. *Id.*, ¶ 2. Following the tussle, Dr. Peck observed McCombs walk east through the parking lot, while the other male got into a dark colored sedan, backed the sedan into a building, and drove away. Dkt. 38-5, pg. 3.

On the afternoon of November 4, 2015, Kepler called McCombs's daughter, Morgan. Dkt. 38-7, ¶ 5. Morgan also informed Kepler that McCombs had a young girlfriend who lived on the southside of Indianapolis. *Id.* His girlfriend's name was Brieanna Boothe. Dkt. 38-5, ¶ 5. Kepler located McCombs's vehicle and learned that it had been found on fire near railroad tracks at the 1500 block of S. Keystone Ave. Dkt. 38-7, ¶ 6.

Kepler interviewed Boothe on November 5, 2015. *Id.*, ¶ 11. Boothe lived very near where McCombs's burning car was discovered. Dkt. 38-1, pg. 2.; Dkt. 38-7, ¶ 6. Boothe stated that she had been letting her friend, Jasmine Wills, stay with her and that Wills had a boyfriend named Shaquille Hollingsworth. Dkt. 38-1, pg. 12; Dkt. 38-7, ¶ 11. Boothe stated that McCombs and Hollingsworth had been at her house on November 3, 2015. Dkt. 38-1, pg. 12; Dkt. 38-7, ¶ 11. At around 5 p.m. that day the two had been together in McCombs's car "talking business" before they left together to get food. Dkt. 38-1, pg. 12; Dkt. 38-7, ¶ 11. McCombs returned to Boothe's house, and Boothe informed McCombs that someone by the name of Destany Shotwell had threatened to come to her house and fight her. Dkt. 38-7, ¶ 12. She told McCombs that she was going to call the police, at which point McCombs left because he feared the police would find drugs in his car. Dkt. 38-1, pg. 10; Dkt. 38-7, ¶ 12.

Boothe stated that sometime after McCombs left, Shotwell and several other individuals came to her home and kicked in the door. Dkt. 38-1, pg. 12; Dkt. 38-7, ¶ 13. After these individuals arrived, Hollingsworth received a call from Jasmine Wills asking him to return to Boothe's house. Dkt. 38-8, pg. 11. Hollingsworth then met up with three of his friends, grabbed his gun, and went to Boothe's house to make everyone leave. *Id.* The individuals that had kicked in Boothe's door eventually left with Hollingsworth. *Id.* at 12. Boothe told Kepler that she then kicked Wills and Hollingsworth out of her house because she was angry at them for "partying with the enemy." Dkt. 38-1, pg. 23.

On November 6, 2015, Kepler asked officers to locate Hollingsworth so that he could be questioned. Dkt. 38-7, ¶ 17. Officers located Hollingsworth and Wills pushing a stroller down Renton Ave., near Boothe's house. *Id.* A young infant was in the stroller, along with several bags

of marijuana. *Id*. Officers placed Hollingsworth in handcuffs and brought him and Wills to the police station. *Id.*

Kepler interviewed Wills first. Dkt. 38-7, ¶ 18. Wills initially claimed that Hollingsworth was with her the entire evening of the 3rd and morning of the 4th. Ex. B at 10. However, upon further questioning, Wills changed her story, stating that Hollingsworth was out with McCombs on the morning of the 4th. *Id*. at 18. She stated that Hollingsworth told her that he shot McCombs because McCombs would not give him a ride home. *Id*. at ¶ 18. Wills also stated Hollingsworth told her that, following the shooting, he drove McCombs's car away from the scene and set it on fire. *Id.*

Kepler then interviewed Hollingsworth. *Id.*, ¶ 20. Hollingsworth initially denied that he was with McCombs at the time of the shooting. *Id.* He claimed that after he left Boothe's house on the 3rd, he went to a friend's house and spent the night smoking weed and watching movies. Dkt. 38-3, pg. 6. He stated that he was never with McCombs at any time on the morning of the 4th and was not there when McCombs was shot. *Id*. at 14, 15. Hollingsworth denied having any knowledge of what happened to McCombs's car, again insisting that he was at his friend's house the whole night. *Id.*at 18.

Upon further questioning, Hollingsworth admitted that he was with McCombs at the time that McCombs was shot. *Id*. at 21. He denied shooting McCombs, however. *Id*. He claimed that another man appeared in the parking lot and shot McCombs. *Id*. Hollingsworth admitted to driving McCombs's car away from the scene and setting it on fire near the railroad tracks. *Id*. at 21-22.

A search of Hollingsworth's cell phone revealed that all of his sent text messages had been deleted. Dkt. 38-7, ¶ 22. There was, however, an incoming text from someone named "Rex," who

Detective Kepler believed to be Hollingsworth's brother. *Id.* The text stated "As long as that pistol gone u straight bro." *Id.*

Kepler believed that probable cause existed to charge Hollingsworth with the murder of McCombs and arson. *Id.* at ¶ 23. On November 9, 2015, Kepler wrote an affidavit of probable cause detailing the findings of his investigation. *Id.* at ¶ 25. The Marion Superior Court reviewed this affidavit and found that probable cause existed. Dkt. 38-5; Ex. I at 2. On that same day, the State charged Hollingsworth with murder, felony murder, armed robbery, and arson. Dkt. 38-6. Hollingsworth was tried and acquitted of murder, felony murder, and armed robbery. Dkt. 38-9. The jury convicted him of arson. Dkt. 38-10.

Before Kepler filed his probable cause affidavit, on November 7, 2015, Hollingsworth was also charged with possession of marijuana. Dkt. 38-4. He eventually pleaded guilty to this charge. Dkt. 38-8, pg. 30.

### III. Discussion

Hollingsworth's claim is that Kepler arrested him without probable cause in violation of his Fourth Amendment rights. "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017). The existence of probable cause "is an absolute defense to a § 1983 claim for false arrest." *Gutierrez v. Kermon*, 722 F.3d 1003, 1007 (7th Cir. 2013). "Probable cause to arrest exists if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed . . . a crime." *Id.* (citing *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013)). "A judicial determination of probable cause is normally entitled to a presumption of validity . . . ." *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019).

In support of his motion for summary judgment, Kepler argues that he did not personally arrest Hollingsworth for possession of marijuana and that there was probable cause to arrest him for murder and arson.

A. *Possession of Marijuana*

Kepler first argues that he did not violate Hollingsworth's Fourth Amendment rights because he was not responsible for arresting him for possession of marijuana. Hollingsworth's claims are necessarily brought pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (internal quotation omitted). A defendant in a § 1983 action can be liable only for the actions or omissions in which she personally participated. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

Kepler asked officers to locate Hollingsworth so that he could be questioned. Dkt. 38-7, ¶ 17. When those other officers located Hollingsworth, they found him pushing a stroller containing marijuana. *Id.* At that point, the officers had probable cause to arrest Hollingsworth for possession of marijuana. *See Gutierrez*, 722 F.3d at 1007. Having failed to respond to the motion for summary judgment, Hollingsworth has failed to dispute these facts. It is therefore undisputed that, other than seeking Hollingsworth for questioning, Kepler did not take part arresting him for possession of marijuana. He therefore cannot be held liable for violating Hollingsworth's Fourth Amendment rights based on these events. *Colbert*, 851 F.3d at 657.

B.  *Arrest for Murder and Arson*

Kepler also argues that there was probable cause to arrest Hollingsworth for murder and arson. At the time that Kepler determined that probable cause existed to charge Hollingsworth with murder and arson, he possessed the following information: 1. Hollingsworth was with McCombs at the time he was shot; 2. A witness at the scene stated that two men were tussling with each other in the parking lot; 3. Hollingsworth initially lied about his activities that night; 4. Hollingsworth's cell phone contained an incoming message stating "As long as that pistol gone u straight bro."; 5. Hollingsworth admitted that he fled the scene in McCombs's car after the shooting. 6. Hollingsworth admitted to parking the car near railroad tracks and setting it on fire. 7. Jasmine Wills stated that Hollingsworth had admitted to her that he shot McCombs. Again, because he has failed to respond to the motion for summary judgment, Hollingsworth has failed to dispute these facts.

This information would allow a reasonably prudent person to believe that there was a fair probability that Hollingsworth had shot McCombs and set the car on fire in an attempt to destroy evidence of his involvement in the crime. The officer would thus have probable cause to arrest Hollingsworth for murder and arson. *See Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011) (the existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim) (*citing Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004)). Moreover, a judge of the Marion Superior Court determined that probable cause existed to hold Hollingsworth on charges of murder and arson. "A judicial determination of probable cause is normally entitled to a presumption of validity . . . ." *Lewis*, 914 F.3d at 477. Hollingsworth has pointed to no facts that

would overcome this presumption. Kepler has therefore shown that he did not arrest him without probable cause.

### IV. Conclusion

Kepler has demonstrated his entitlement to summary judgment on Hollingsworth's claims and Hollingsworth has failed to respond. Kepler's motion for summary judgment, dkt. [37], is **granted**. Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 4/8/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

SHAQUILLE HOLLINGSWORTH
200696
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135

Anne Celeste Harrigan
OFFICE OF CORPORATION COUNSEL
anne.harrigan@indy.gov